**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

```
------------------------------------------------------------------------X
LEDGE LOUNGER, INC.                              :
                                                 :
            Plaintiff,                           :
                                                 :     Case No. 4:23-cv-00727
      - against -                                :
                                                 :     Jury Trial Demanded
LUXURY LOUNGER, INC.                             :
                                                 :
            Defendant.                           :
------------------------------------------------------------------------X
```

## <u>DEFENDANT'S ANSWER AND DEFENSES, AND COUNTERCLAIMS</u>

Defendant Luxury Lounger, Inc. ("Defendant"), by and through its undersigned attorneys, for its Answer, Defenses, and Counterclaims to Plaintiff Ledge Lounger's ("Plaintiff") Complaint, alleges as follows:

### <u>PARTIES</u>

1. Defendant is without information sufficient information to admit or deny the allegations of Paragraph 1 of the Complaint and therefore denies same.

2. Defendant admits the allegations of Paragraph 2 of the Complaint.

### <u>JURISDICTION AND VENUE</u>

3. Defendant admits that Plaintiff filed a Complaint for damages and injunctive relief, but otherwise denies any liability or wrongdoing of any type.

4. Defendant admits the allegations of Paragraph 4 of the Complaint.

5. Defendant admits the allegations of Paragraph 5 of the Complaint.

6. Defendant admits the allegations of Paragraph 6 of the Complaint.

## FACTUAL BACKGROUND

7.    Defendant is without information sufficient information to admit or deny the allegations of Paragraph 7 of the Complaint and therefore denies same.

8.    Defendant is without information sufficient information to admit or deny the allegations of Paragraph 8 of the Complaint and therefore denies same.

9.    Defendant is without information sufficient information to admit or deny the allegations of Paragraph 9 of the Complaint and therefore denies same.

10.    Defendant is without information sufficient information to admit or deny the allegations of Paragraph 10 of the Complaint and therefore denies same.

11.    Defendant is without information sufficient information to admit or deny the allegations of Paragraph 11 of the Complaint and therefore denies same.

12.    Defendant is without information sufficient information to admit or deny the allegations of Paragraph 12 of the Complaint and therefore denies same.

13.    Defendant is without information sufficient information to admit or deny the allegations of Paragraph 13 of the Complaint and therefore denies same.

14.    Defendant denies the allegations of Paragraph 14 of the Complaint.

15.    Defendant is without information sufficient information to admit or deny the allegations of Paragraph 15 of the Complaint and therefore denies same.

16.    Defendant denies the allegations of Paragraph 16 of the Complaint.

17.    Defendant is without information sufficient information to admit or deny the allegations of Paragraph 17 of the Complaint and therefore denies same

18.    Defendant is without information sufficient information to admit or deny the allegations of Paragraph 18 of the Complaint and therefore denies same.

19.    Defendant denies the allegations of Paragraph 19 of the Complaint.

20.     The drawing of the mark of the '905 Registration speaks for itself.  Defendant denies that the mark of the '905 Registration and/or the '905 Registration itself are valid and/or protectable.

21.     Defendant denies the allegations of Paragraph 21 of the Complaint.

22.     Defendant is without information sufficient information to admit or deny the allegations of Paragraph 22 of the Complaint and therefore denies same.

23.     Defendant denies the allegations of Paragraph 23 of the Complaint.

24.     Defendant denies the allegations of Paragraph 24 of the Complaint.

25.     Defendant is without information sufficient information to admit or deny the allegations of Paragraph 25 of the Complaint and therefore denies same.

26.     Defendant denies the allegations of Paragraph 26 of the Complaint.

27.     Defendant is without information sufficient information to admit or deny the allegations of Paragraph 27 of the Complaint and therefore denies same.

28.     Defendant is without information sufficient information to admit or deny the allegations of Paragraph 28 of the Complaint and therefore denies same.

29.     Defendant is without information sufficient information to admit or deny the allegations of Paragraph 29 of the Complaint and therefore denies same.

30.     Defendant denies the allegations of Paragraph 30 of the Complaint.

31.     Defendant denies the allegations of Paragraph 31 of the Complaint.

32.     Defendant denies the allegations of Paragraph 32 of the Complaint.

33.     Defendant denies the allegations of Paragraph 33 of the Complaint.

34.     Defendant denies the allegations of Paragraph 34 of the Complaint.

35.     Defendant denies the allegations of Paragraph 35 of the Complaint.

36.     Defendant denies the allegations of Paragraph 36 of the Complaint.

37.     Defendant denies the allegations of Paragraph 37 of the Complaint.

38.     Defendant denies the allegations of Paragraph 38 of the Complaint.

39.     Defendant denies the allegations of Paragraph 39 of the Complaint.

40.     Defendant denies the allegations of Paragraph 40 of the Complaint.

41.     Defendant denies the allegations of Paragraph 41 of the Complaint.

42.     Defendant denies the allegations of Paragraph 42 of the Complaint.

43.     Defendant denies the allegations of Paragraph 43 of the Complaint.

44.     Defendant denies the allegations of Paragraph 44 of the Complaint.

45.     Defendant denies the allegations of Paragraph 45 of the Complaint.

46.     Defendant denies the allegations of Paragraph 46 of the Complaint.

### Count I: Trade Dress Infringement Under § 32 of the Lanham Act 15 U.S.C. § 1114

47.     Defendant repeats and incorporates by reference its responses as set forth in Paragraphs 1-46 above .

48.     Defendant denies the allegations of Paragraph 48 of the Complaint.

49.     Defendant denies the allegations of Paragraph 49 of the Complaint.

50.     Defendant denies the allegations of Paragraph 50 of the Complaint.

51.     Defendant denies the allegations of Paragraph 51 of the Complaint.

52.     Defendant denies the allegations of Paragraph 52 of the Complaint.

### Count II: Trade Dress Infringement Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

53.     Defendant repeats and incorporates by reference its responses as set forth in Paragraphs 1-52 above.

54.     Defendant denies the allegations of Paragraph 54 of the Complaint.

55.     Defendant denies the allegations of Paragraph 55 of the Complaint.

56.     Defendant denies the allegations of Paragraph 56 of the Complaint.

57.     Defendant is without information sufficient information to admit or deny the allegations of Paragraph 57 of the Complaint and therefore denies same.

## Count III: Trade Dress Dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)

58.     Defendant repeats and incorporates by reference its responses as set forth in Paragraphs 1-57.

59.     Defendant denies the allegations of Paragraph 59 of the Complaint.

60.     Defendant denies the allegations of Paragraph 60 of the Complaint.

61.     Defendant denies the allegations of Paragraph 61 of the Complaint.

62.     Defendant denies the allegations of Paragraph 62 of the Complaint.

63.     Defendant denies the allegations of Paragraph 63 of the Complaint.

## Count IV: Trade Dress Dilution under Tex. Bus. & Com. Code § 16.103

64.     Defendant repeats and incorporates by reference its responses as set forth in Paragraphs 1-63 above.

65.     Defendant denies the allegations of Paragraph 65 of the Complaint.

66.     Defendant denies the allegations of Paragraph 66 of the Complaint.

67.     Defendant denies the allegations of Paragraph 67 of the Complaint.

68.     Defendant denies the allegations of Paragraph 68 of the Complaint.

69.     Defendant denies the allegations of Paragraph 69 of the Complaint.

## Count V: Unfair Competition and False Designation of Origin Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

70.     Defendant repeats and incorporates by reference its responses as set forth in Paragraphs 1-69 above.

71.     Defendant denies the allegations of Paragraph 71 of the Complaint.

72.     Defendant denies the allegations of Paragraph 72 of the Complaint

73.     Defendant denies the allegations of Paragraph 73 of the Complaint.

74.     Defendant denies the allegations of Paragraph 74 of the Complaint.

## **Count VI: Common Law Trade Dress Infringement**

75.     Defendant repeats and incorporates by reference its responses as set forth in Paragraphs

        1-74 above.

76.     Defendant denies the allegations of Paragraph 76 of the Complaint.

77.     Defendant denies the allegations of Paragraph 77 of the Complaint.

78.     Defendant denies the allegations of Paragraph 78 of the Complaint.

79.     Defendant denies the allegations of Paragraph 79 of the Complaint.

80.     Defendant denies the allegations of Paragraph 80 of the Complaint.

## **Count VII: Common Law Unfair Competition**

81.     Defendant repeats and incorporates by reference its responses as set forth in Paragraphs

        1-80 above.

82.     Defendant denies the allegations of Paragraph 82 of the Complaint

83.     Defendant denies the allegations of Paragraph 83 of the Complaint.

84.     Defendant denies the allegations of Paragraph 84 of the Complaint.

85.     Defendant denies the allegations of Paragraph 85 of the Complaint.

86.     Defendant denies the allegations of Paragraph 863 of the Complaint.

## **Count VIII: Common Law Misappropriation**

87.     Defendant repeats and incorporates by reference its responses as set forth in Paragraphs

        1-86 above.

88.     Defendant denies the allegations of Paragraph 88 of the Complaint.

89.     Defendant denies the allegations of Paragraph 89 of the Complaint.

90.     Defendant denies the allegations of Paragraph 90 of the Complaint.

91.     Defendant denies the allegations of Paragraph 91 of the Complaint.

92.     Defendant denies the allegations of Paragraph 92 of the Complaint.

93.     Defendant denies the allegations of Paragraph 93 of the Complaint.

## Count IX: Unjust Enrichment

94.     Defendant repeats and incorporates by reference its responses as set forth in Paragraphs

        1-93 above.

95.     Defendant denies the allegations of Paragraph 95 of the Complaint.

96.     Defendant denies the allegations of Paragraph 96 of the Complaint.

97.     Defendant denies the allegations of Paragraph 97 of the Complaint.

98.     Defendant denies the allegations of Paragraph 98 of the Complaint.

99.     Defendant denies the allegations of Paragraph 99 of the Complaint.

100.    Defendant denies the allegations of Paragraph 100 of the Complaint.

## Count X: Infringement of U.S. Patent D917,189 Under 35 U.S.C. § 271

101.    Defendant repeats and incorporates by reference its responses as set forth in Paragraphs

        1-100 above.

102.    Defendant denies the allegations of Paragraph 102 of the Complaint.

103.    Defendant denies the allegations of Paragraph 103 of the Complaint.

104.    Defendant denies the allegations of Paragraph 104 of the Complaint.

105.    Defendant denies the allegations of Paragraph 105 of the Complaint.

106.    Defendant denies the allegations of Paragraph 106 of the Complaint.

107.    Defendant denies the allegations of Paragraph 107 of the Complaint.

108.    Defendant denies the allegations of Paragraph 108 of the Complaint.

## Count XI: Infringement of U.S. Patent D917,190 Under 35 U.S.C. § 271

109.    Defendant repeats and incorporates by reference its responses as set forth in Paragraphs

        1-108 above.

110.    Defendant denies the allegations of Paragraph 110 of the Complaint.

111.    Defendant denies the allegations of Paragraph 111 of the Complaint.

112.    Defendant denies the allegations of Paragraph 112 of the Complaint.

113.    Defendant denies the allegations of Paragraph 113 of the Complaint.

114.    Defendant denies the allegations of Paragraph 114 of the Complaint.

115.    Defendant denies the allegations of Paragraph 115 of the Complaint.

116.    Defendant denies the allegations of Paragraph 116 of the Complaint.


## **Demand for Jury Trial**

Defendant hereby demands a jury trial on all issues so triable, including all claims, defenses, and counterclaims.


## **DEFENSES**

1.    Plaintiff fails to state a claim upon which relief can be granted,

2.    Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands, based at least in part, on Plaintiff's acts of fraud upon the Patent and Trademark Office, as detailed below in Defendant's counterclaims..

3.    Plaintiff's '905 Mark (whether registered or not) and '905 Registration are invalid and unenforceable for a number of reasons, including without limitation, fraud on the Patent and Trademark Office, the design of the Mark is functional, the design of the Mark is not distinctive (either inherently or by acquisition of a secondary meaning), and/or the design of the Mark does not and cannot function to identify the source of the product.

4.    Upon information and belief, Plaintiff is aware that the '905 Mark and '905 Registration are invalid and unenforceable.

8

5.     Plaintiff's asserted trade dresses are not famous and not entitled to protection against any alleged dilution.

6.     To the extent Plaintiff claims trade dress rights in the design(s) of any product(s) other than those allegedly protected by the '905 Mark and/or '905 Registration, Plaintiff fails to state a claim with respect to any such designs, Plaintiff has failed to describe and define such trade dress(es) with sufficient specificity, any such design(s) are invalid and unenforceable for a number of reasons, including without limitation, the design(s) are functional, the design(s) are not distinctive (either inherently or by acquisition of a secondary meaning) and/or the design(s) do not and cannot function to identify the source of the product(s), and/or the design(s) are not famous.

7.     To the extent Plaintiff does own any valid and protectable trade dress rights, Defendant has not infringed, misappropriated, diluted, and/or otherwise violated any such rights.

8.     The activities complained of by Plaintiff in the Complaint and/or Defendant's activities have not resulted in the unjust enrichment of Plaintiff.

9.     Plaintiff's U.S. Patent D917,189 is invalid and/or unenforceable.

10.     To the extent Plaintiff's U.S. Patent D917,189 may be valid and enforceable, Defendant has not infringed the patent.

11.     Plaintiff's U.S. Patent D917,190 is invalid and/or unenforceable.

12.     To the extent Plaintiff's U.S. Patent D917,190 may be valid and enforceable, Defendant has not infringed the patent.

## COUNTERCLAIMS

## DEFENDANT / COUNTERCLAIMANT'S COUNTERCLAIMS

Defendant / Counterclaimant Luxury Lounger, Inc. ("Defendant"), by and through its undersigned attorneys, for its Counterclaims to Plaintiff Ledge Lounger's ("Plaintiff") Complaint, alleges as follows:

## NATURE OF THE ACTION

1.   Defendant's Counterclaims seek cancellation of Defendant's U.S. Trademark Registration No. 6,932,905 (the " '905 Registration") and declarations that Defendant's asserted registered and unregistered trade dresses are invalid and unenforceable.

2.   Defendant's Counterclaims further seek declarations that Defendant's asserted patents are invalid and unenforceable.

## THE PARTIES

3.   Luxury Lounger is a company organized and existing under the laws of the State of Texas with a principal place of business at 500 Stonegate Drive, Katy, Texas 77494.

4.   Upon information and belief, Ledge Lounger is a company organized and existing under the laws of the State of Texas with a principal place of business at 616 Cane Island Parkway, Suite 100, Katy, Texas 77494.

## JURISDICTION AND VENUE

5.   This Court has subject matter jurisdiction over these Counterclaims pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), 1367(a), and 2201.

6.   This Court has personal jurisdiction over Ledge Lounger because, *inter alia*, Ledge Lounger is a Texas corporation residing in this district and has a principal place of business in Texas and in this District. This Court also has personal jurisdiction over

Ledge Lounger because, inter alia, Ledge Lounger is purposefully and intentionally availing itself of the privileges of doing business in the State of Texas, including in this District, by, for example, advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing infringing products to customers and/or potential customers, including in this District.

7.   Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391(a)-(d) and/or 1400(b).

**COUNT I**
**Cancellation of U.S. Trademark Registration No. 6,932,905**
**Fraud on the U.S. Patent and Trademark Office**

8.   Defendant realleges and incorporates the allegations set forth in paragraphs 1 through 7 as though fully set forth herein.

9.   On October 30, 2019, Plaintiff filed U.S. Trademark Application Serial No. 88/600,425 (the "'425 Application"), which application matured into U.S. Trademark Registration No. 6,932,905 (the '905 Registration"), with the U.S. Patent and Trademark Office ("PTO") to register a design (the "Wave Form Design") for "lounge furniture and outdoor furniture," as shown below:



10.   As part of its '425 Application, Plaintiff described the design of the application as follows: "The mark consists of a wave form chair."

11.     The description of the mark of the '905 Registration, as appearing on the face of the '905

        Registration, is as follows:

>       The mark consists of a three-dimensional configuration of a chair curved
>       like a wave where the back of the chair slopes down and the lower half of
>       the chair curves up and down towards the right. The bottom side of the chair
>       and the horizontal line at the base of the curve to the right side appear in
>       broken lines and are not claimed as features of
>       the mark.

12.     In addition to the patents and trademarks asserted by Plaintiff in its Complaint, Plaintiff

        owns U.S. Patent No. 10,104,975 (the "975 Patent") entitled "Threaded Plugs in

        Furniture Being Partially Submerged" and U.S. Patent No. 10,676,245 (the "'245 Patent"

        or collectively, the "Utility Patents"), with the same title.

13.     Drawings from the '975 Patent are shown below:



FIG. 2                                                          FIG. 3



FIG. 4A

FIG. 8

14.   In addition to the drawings, the '975 Patent contains written descriptions of the design of

the chair, including without limitation:

> **Here, said chair has a wave shape having said back with a higher
> height than said lower bend. Likewise, said lower bend has a gentle
> arc as coming up from said seat and down to said foot rest.**  Col. 4, ln.
> 54-57 (internal reference numbers omitted)(emphasis added).

15.   Plaintiff filed the application that resulted in the '975 Patent on May 31, 2017, and the

'975 Patent issued on October 23, 2018.

16.   Plaintiff filed the application that resulted in the '245 patent on September 24, 2018, and

the '245 Patent issued on June 9, 2020.

17.   On December 11, 2019, the PTO issued an "Office Action" by which the PTO refused to

register the Wave Form Design of the '425 Application because, *inter alia,* the examining

attorney determined that the Wave Form Design "is overall functional." In the Office

Action, the PTO stated:

> **Registration is refused because the applied-for mark, which consists
> of a three-dimensional configuration of the goods, appears to be a
> functional design for such goods.** Trademark Act Section 2(e)(5), 15
> U.S.C. § 1052(e)(5). . . .  In this case, the attached evidence demonstrates
> that the wave form design of the chair serves as both the mechanism to
> hold the chair in an upright position and as a recliner for the user. . . .
> Moreover, the applicant's website describes the goods as 'contoured,
> comfortable place to relax on your tanning ledge or Baja shelf ...' See
> attached evidence from applicant's website. **Because the configuration is**

**functional, a Section 2(e)(5) refusal is issued in the present case.**
(emphasis added).

18.     After determining that the mark as applied for was functional and not entitled to

registration or protection, in the event Plaintiff chose to file a response to the Office

Action, the PTO requested additional information:

> Applicant must provide the following information and documentation
> regarding the applied-for three-dimensional configuration mark:
> (1) **A written statement as to whether the applied-for mark, or any
> feature(s) thereof, is or has been the subject of a design or
> utility patent or patent application**, including expired patents
> and abandoned patent applications. (emphasis added).

19.     In response to the Office Action, Plaintiff caused a response to be prepared and filed at

the PTO. As part of the response, Plaintiff filed the Declaration of its Founder and Chief

Executive Officer Christopher Anderson ("Anderson"), executed on June 10, 2020 (the

"Anderson Declaration").

20.     Anderson signed the Anderson Declaration under oath and under penalty of perjury,

pursuant to 18 U.S.C. § 1001.

21.     In addition to being the founder and CEO of Plaintiff, Anderson is also the first named

inventor of the inventions of the Utility patents, as shown on the faces of the Utility

Patents.

22.     Anderson executed the Anderson Declaration and Plaintiff filed the Anderson

Declaration after the filing of the Utility Patents.

23.     The Utility Patents both issued prior to the date of Plaintiff's filing of the Anderson

Declaration.

24.     Plaintiff, through Anderson, had actual knowledge of the Utility Patents and their

respective applications at the time Anderson executed the Anderson Declaration and at

the time Plaintiff filed the Anderson Declaration in response to the Office Action

rejecting the application to register the mark of the '905 Registration.

25.    The Anderson Declaration contained numerous materially false and/or fraudulent

statements and/or representations, as detailed hereinbelow.

26.    Specifically, and without limitation, Plaintiff's false statements, made through the

Anderson Declaration, included the following statement appearing at Paragraph 29 of the

Anderson Declaration:

> **Neither the applied-for-mark, nor any features thereof, is or has been
> the subject matter of a design or utility patent or patent application,
> including expired patents and abandoned patent applications.**

27.    Specifically, and without limitation, Plaintiff's false statements, made through the

Anderson Declaration, included the following statement appearing at Paragraph 35 of the

Anderson Declaration:

> **The design at issue was developed separate from the function of lounge and
> outdoor furniture.**

28.    When Anderson executed the Anderson Declaration and when Plaintiff filed the

Declaration with the PTO, Anderson and Plaintiff were aware of the Utility Patents, and

in particular, Figures 2, 4A and 8 in the '975 Patent.

29.    Figures 2, 4A and 8 of the '975 Patent disclose the Wave Form Design and disclose

and describe the functionality of such Design.

30.    When Anderson executed the Anderson Declaration and when Plaintiff filed the

Declaration with the PTO, Anderson and Plaintiff were aware of the specification of the

'975 Patent, and in particular Column 1, Lines 62-63, Col. 4: Lines 54-57, Column 5,

Lines 27-29, and Column 6, Line 60 – Column 7, Line 10.

31.   Column 1, Lines 62-63, Col. 4: Lines 54-57, Column 5, Lines 27-29, and Column

6, Line 60 – Column 7, Line 10 of the '975 Patent disclose and describe the functionality

of the Wave Form Design.

32.   When Anderson executed Anderson Declaration and when Plaintiff filed the Declaration

with the PTO, Anderson and Plaintiff were aware of Claim 1 of the '975 Patent.

33.   Claim 1 of the '975 Patent reads on "a submergible furniture" with the Wave Form

Design, if such chair also meets the other limitations of Claim 1.

34.   The Wave Form Design is encompassed by the subject matter of the '975 Patent.

35.   The functionality of the Wave Form Design is disclosed and described by the 975

Patent.

36.   When Anderson executed the executed Anderson Declaration and when Plaintiff filed the

Declaration with the PTO, Anderson and Plaintiff were aware of the falsity of the "The

design at issue was developed separate from the function of lounge and outdoor

furniture" statement.

37.   Prior to making the above statement, Anderson had previously made public statements

that contradict the statement.

38.   By way of example, and without limitation, during the September 3, 2019 "Outside the

Box Casual Living" podcast, Mr. Anderson made the following statements about the

functional considerations in developing the Wave Form Design:

> 2:20 - "I set out to come up with something that you could utilize in the
> pool, you could partially be submerged, and at the same time it wouldn't
> damage the pool interior and it wouldn't damage the product"
>
> 8:37 - "With our products, we did, on purpose, angle the back of the
> chaise a little bit lower than most and the reason being is because, if I want
> to lay back and forget about the world, I can take the headrest pillow off
> and it's very comfortable and I can lay back and forget about the world. If
> I want to see the activity that is going on in front of me, I can add the
> headrest pillow and now kinda bring my head forward a little bit where I

can pay attention to what's going on. Whereas in, a few of the recent competitors, have brought the back quite a bit more forward and now kinda stuck in this spot of wanting to see what's in front of me and not really being able to lay back. And's that, if anything I would say that's the one negative thing about in-water furniture, is it's not adjustable, other than taking the headrest pillow on and off."

29:50 - "Because again the other product I'm talking about or I'm referring to was not made to go inside the swimming pool. So we had to figure out something that could go in the pool and work. So I think that was, for us, the challenge in identifying the right materials to make it out of, you know what was going to last in the pool and the water, and what was going to be durable and still somewhat comfortable. Those were all major challenges that we faced in developing [the Signature Chaise]. You know, I think the original idea, I remember when it was, and it was fulfilling the need for a client that needed the right product for the right environment.

39.     By way of example, and without limitation, during appearance on the "Pool Chasers" podcast in December 2018, Mr. Anderson made the following statements about the functional considerations in developing the Wave Form Design:

50:20 - "You know for us in the beginning, we did some basic research on ergonomics, um, you know the average size individual. Because to you the [Signature] chase might be extremely comfortable, but look I'm not afraid to say it live on a podcast that to some people it's not comfortable at all. Well certainly we have to develop and design the chaise to fit the average individual, the average person out there. So we had to say what's our range is it going to be the person that's 5' 8" to 6 foot, or is it going to be a person that's 5' 4" to 5' 8"?

Well, there is information and stats and data and ergonomics. You can simply do an online survey or, excuse me, an online search and find that information. So we, you know, we took that into consideration we also you know meet some quicktype prototype type things and lay in them. But what was more important was the way that you interact with the water making sure that it was gonna be low enough to the ground where you're actually when you're in the water you're not just....you're actually laying in the water you have water on your butt on your body. Some of those things were a little bit more important.

So you know we had to we had to accept the reality of this is gonna be a hard plastic that's in the pool, so it was really important for it to have a contour that related to the average body style and type. We also had to sacrifice, because we did have some people sit in our original prototypes and say hey this doesn't fit me well. Well, you know, I'm sorry that it done

fit you well but we have to we have to hit the average market here because there's mainly so many people outside of the average and the more and more you go outside the average the less the less people it's gonna be comfortable for. So you know, we did, we did do our ergonomics research.

40.    By way of example, and without limitation, in November 2019, Mr. Anderson made the

following statements about the development of the Wave Form Design and how such

design was dictated by functional considerations during an interview at the International

Pool Spa & Patio Expo in Episode 7, Season 1, entitled "El Podcast de Aqua":

> 3:50 - I started selling a lot of furniture on jobs, and we would always see people take their metal patio furniture and pull it into the swimming pool. And, first of all, what a lot of people don't realize is any metal within five feet of the water or the swimming pool has to be bonded. Right, because if there's a sh…. if the GFCI is short, if there's a short in the electrical, it can send that current through the chair, and ultimately into the person sitting on it or touching that metal. So, that's why hand rails and ladder and any even the, the metal inside the, the gunnite of the concrete is bonded.
>
> So, I started seeing a lot of people move furniture, a lot of apartment complexes, a lot of multi-family, a lot of hospitality, with metal furniture in their pools and they didn't, obviously. they didn't realize the liability.
>
> Right, um, so I one particular job, a really, really wealthy client it was a little over a million-dollar exterior project palm trees house, I mean exterior of the house. Beautiful pool, negative edges out on the water, on the bay, beautiful place. And, I knew that was the project I wanted to come up with something that was different that we could pull put on the tanning ledge and not have to worry about the metal being destroyed, or the metal liability issue, or even the metal transferring onto the plaster, the interior finish of the swimming pool.

41.    By way of example, and without limitation, during the April 24, 2020 "StellarZone"

podcast, Mr. Anderson made the following statements about the functional considerations

in developing the Wave Form Design:

> 6:30 - "I quickly noticed that a lot of them would drag their patio furniture that I had purchased from, whether it was from Restoration Hardware, or a local furniture store, in the pool and put it on the tanning ledge. And obviously we would see, the tanning ledge, the plaster on the tanning ledge get damaged because the metal of the furniture, as well as we would see the furniture get damaged pretty quickly because of the chemicals and the harsh environment of the swimming pool. I was inspired to develop a

piece of furniture that you could put in the tanning ledge and you could lay
out with partial of your body in the water, partial of your body out of the
water and really enjoy that space. And that's pretty much how Ledge
Lounger got founded."

42.    The foregoing statements by Anderson evidence that the design at issue was developed

specifically for functional purposes.

43.    The Anderson Declaration contained one or more false statements, as detailed above.

44.    Anderson and Plaintiff knew that the Anderson Declaration contained one or more false

statements when Anderson executed it and when Plaintiff filed it with the PTO.

45.    Upon information and belief, Anderson executed the Anderson Declaration and Plaintiff

filed the Anderson Declaration Applicant made the 2020 Patent Statement with intent

to deceive the PTO.

46.    The PTO relied on the Anderson Declaration generally and the false statements therein

particularly, in determining to reverse its position and grant the '905 Registration.

47.    Accordingly, pursuant to 15 U.S.C. §§ 1064 and 1119, the '905 Registration must be

cancelled because it was obtained fraudulently.


**COUNT II**
**Cancellation of U.S. Trademark Registration No. 6,932,905**
**The Design of the '905 Registration is Functional**

48.    Defendant realleges and incorporates the allegations set forth in paragraphs 1 through 39

as though fully set forth herein.

49.    Pursuant to 15 U.S.C. §§ 1052(e) and 1064(3), registration of a trademark or trade dress

that is functional prohibited.

50.    The mark of the '905 Registration and the product that it allegedly protects are

functional.

51.     Plaintiff's Utility Patents evidence the functionality of the mark of the '905 Registration
and the product that it allegedly protects.

52.     Plaintiff's advertisements for the products allegedly protected by the'905 Registration
evidence the functionality of the mark of the '905 Registration.

53.     Anderson's numerous public statements regarding the products allegedly protected by
the'905 Registration evidence the functionality of the mark of the '905 Registration and
the product that it allegedly protects.

54.     By way of example, and without limitation, Anderson made the following statements
during an appearance on the "Pool Chasers" podcast in December 2018 about the
functional considerations made during the design and development Wave Form Design:

> 50:20 - "You know for us in the beginning, we did some basic research on
> ergonomics, um, you know the average size individual. Because to you the
> [Signature] chase might be extremely comfortable, but look I'm not afraid
> to say it live on a podcast that to some people it's not comfortable at all.
> Well certainly **we have to develop and design the chaise to fit the
> average individual, the average person out there**. So we had to say
> what's our range is it going to be the person that's 5' 8" to 6 foot, or is it
> going to be a person that's 5' 4" to 5' 8"?
>
> Well, there is information and stats and data and ergonomics. You can
> simply do an online survey or, excuse me, an online search and find that
> information. So we, you know, we took that into consideration we also
> you know meet some quicktype prototype type things and lay in them. **But
> what was more important was the way that you interact with the
> water making sure that it was gonna be low enough to the ground
> where you're actually when you're in the water you're not
> just....you're actually laying in the water you have water on your butt
> on your body.** Some of those things were a little bit more important.

(emphasis added).

55.     Accordingly, pursuant to 15 U.S.C. §§ 1064 and 1119, the '905 Registration must be
cancelled because the mark of the '905 Registration is functional.

**COUNT III**
**Cancellation of U.S. Trademark Registration No. 6,932,905**
**The Design of the Registration is Not Distinctive and Does Not Identify the Source Goods**

56.    Defendant realleges and incorporates the allegations set forth in paragraphs 1 through 47 as though fully set forth herein.

57.    Because the Wave Form Design purports to protect a product configuration, the Wave Form Design is not, and cannot legally be considered, inherently distinctive.

58.    The Wave Form Design has not acquired distinctiveness , or a secondary meaning.

59.    The Wave Form Design does not identify a single source of origin of Plaintiff's goods.

60.    Numerous third parties make and sell the same and/or similar products that include designs substantially similar to Plaintiff's Wave Form Design.

61.    Plaintiff has not made substantially exclusive use of the Wave Form Design in marketing and selling products that incorporate the Wave Form Design.

62.    Plaintiff has not promoted the Wave Form Design as a trademark in its advertising.

63.    Plaintiff has not engaged in "look for" advertising that highlights or emphasizes the Wave Form Design as anything other than the shape of Plaintiff's product.

64.    Customers have not come to recognize the Wave Form Design as distinctive of Plaintiff's goods or as an indication of the source of origin pf Plaintiff's goods.

65.    The Wave Form Design does not identify or indicate the source of origin of Plaintiff's goods.

66.    Upon information and belief, Plaintiff has engaged in "private labeling" of certain of its products that are the same or similar to its Wave Form Design, by which Plaintiff's goods are sold under the trademark(s) of one or more third parties, making it impossible for the Wave Form Design to identify Plaintiff as the single source of origin of such goods.

67.     The primary significance of the Wave Form Design in the minds of consumers is

        to identify the Signature Chaise product itself, not the source of origin of such goods.


**COUNT IV**
**Patent Invalidity**
**U.S. Patent D 917,189**

68.     Defendant realleges and incorporates the allegations set forth in paragraphs 1 through 60

        as though fully set forth herein.

69.     U.S. Patent D 917,189 (the "'189 Patent") is a design patent.

70.     The '189 patent is invalid because its design is not "ornamental" as required by 35 U.S.C.

        § 171; rather, the design is functional.

71.     The '189 Patent and each and every of its individual claims is invalid as anticipated

        and/or obvious pursuant to 35 U.S.C. §§ 102 and/or 103.

72.     Without limitation, upon information and belief, Plaintiff offered for sale and/or sold

        products falling within the scope of the claim(s) of the '189 Patent prior to the filing date

        of the application that matured into the '189 Patent and more than one year prior to such

        application date.

73.     Without limitation, upon information and belief, the invention of the '189 Patent was

        published or otherwise made public more than one year prior to the filing of the

        application that matured into the '189 Patent.

74.     Defendant is entitled to, and hereby seeks, a declaration of invalidity of the '189 Patent.

## COUNT V
## Patent Invalidity
## <u>U.S. Patent D 917,190</u>

75.  Defendant realleges and incorporates the allegations set forth in paragraphs 1 through 64 as though fully set forth herein.

76.  U.S. Patent D 917,190 (the "'190 Patent") is a design patent.

77.  The '190 Patent is invalid because its design is not "ornamental" as required by 35 U.S.C. § 171; rather, the design is functional.

78.  Without limitation, upon information and belief, Plaintiff offered for sale and/or sold products falling within the scope of the claim(s) of the '190 Patent prior to the filing date of the application that matured into the '190 Patent and more than one year prior to such application date.

79.  Without limitation, upon information and belief, the invention of the '190 Patent was published or otherwise made public more than one year prior to the filing of the application that matured into the '190 Patent.

80.  The '190 Patent and each and every of its individual claims is invalid as anticipated and/or obvious pursuant to 35 U.S.C. §§ 102 and/or 103.

81.  Defendant is entitled to, and hereby seeks, a declaration of invalidity of the '189 Patent.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Defendant Plaintiff respectfully prays that:

1.   Plaintiff's Complaint be dismissed in their entirety with prejudice;

2.   The Court declare that Plaintiff's asserted intellectual property rights are invalid and unenforceable, or in the alternative, that Defendant has not infringed Plaintiff's asserted intellectual property rights;

3.   That the Court cancel Plaintiff's Trademark Registration No. 6,932,905;

4.   That the Court declare Plaintiff's unregistered trade dress rights invalid and unenforceable;

5.   That the Court declare Plaintiff's asserted design patents invalid and unenforceable;

6.   The Court declare this to be an exceptional case under the patent and the trademark laws; and

7.   That the Court award Defendant all of its fees and costs, including without limitation, attorneys' fees, together with all pre- and post-judgment interest, and all other fees, costs, awards, sanctions, penalties, and interest to which Defendant may be entitled, under the Patent Act, the Lanham Act, the Judicial Code, the Federal and Local Rules of Civil Procedure, and/or the Court's inherent authority; and

8.   Such other and further relief as the Court may deem just and proper.

Dated: September 1, 2023                  Respectfully submitted,
Katy, Texas

**NOLTE LACKENBACH SIEGEL**

By:    <u>*/s/* Wade Johnson</u>
Wade Johnson
Texas Bar No. . 24062197
Southern District of Texas Bar No. 1055556
wjohnson@nls.law
Robert B. Golden
rgolden@nls.law
2717 Commercial Center Blvd., Ste E200
Katy, Texas 77494