IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEDGE LOUNGER, INC., | § § § § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-23-727 |
| LUXURY LOUNGER, INC., | § § § | |
| Defendant. | § § § § | |

**MEMORANDUM AND OPINION**

The parties design, manufacture, and sell pool furniture under different trademarks and patents. The issue is infringement. The plaintiff, Ledge Lounger, Inc., alleges that the defendant, Luxury Lounger, Inc., is infringing its registered trademark and design patents relating to its wave-shaped chairs and hourglass-shaped side tables. Ledge Lounger has moved the court to hold Luxury Lounger in contempt for violating a preliminary injunction that the parties had agreed to. Luxury Lounger responds that the injunction is unenforceable and, alternatively, that it has not violated the injunction. Based on the pleadings, briefing, oral argument, and the applicable law, the motion for contempt is denied. (Docket Entry No. 52). The reasons are set out below.

**I.     Background**

Ledge Lounger holds a federally registered tradedress[1] mark in its "Signature Chaise" product. (Docket Entry No. 47 at ¶ 19). The Signature Chaise is a wave-shaped pool chair:

---

[1] The Fifth Circuit has defined "trade dress" as "the total image and overall appearance of a product [that] may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*, 920 F.3d 243, 251 (5th Cir. 2019).



When this litigation began, Luxury Lounger was selling a similar chair that it called the "Wave Lounger," (*id.* at ¶ 38):



With the parties' agreement, the court preliminarily enjoined Luxury Lounger from selling the Wave Lounger and "colorable imitations thereof":

> Defendant, and its employees, agents and any other persons acting on its behalf, are enjoined from advertising, marketing, importing, manufacturing, promoting, offering for sale, distributing, or selling the Wave Lounger product, colorable imitations thereof, and any other products that are confusingly similar to Plaintiff's trade dress rights in U.S. Trademark Registration No. 6,932,905, pending entry of a final judgment resolving Plaintiff's claims in this litigation or further order of this Court.

(Docket Entry No. 18 at ¶ 2). The preliminary injunction provided that, "[b]y entering into the stipulation, the Parties do not waive any arguments concerning the merits of the action, and expressly reserve all related rights." (*Id.* at ¶ 4).

Since the agreed injunction issued, Luxury Lounger has been selling what Ledge Lounger argues is a colorable imitation of the Wave Lounger:



Original Wave Lounger Chaise (Ex. 1, LUX_00003).   Reintroduced Wave Lounger Chaise (Ex. 2).

Ledge Lounger asks the court to hold Luxury Lounger in contempt. (Docket Entry No. 52). Luxury Lounger responds that the preliminary injunction is unenforceable because it is vague, ambiguous, and merely requires Luxury Lounger to not violate the law. (Docket Entry No. 54). The parties also dispute whether the trademarks and patents are infringed or whether they are valid.

3

## II. The Legal Standards

A preliminary injunction is "an injunction that is issued to protect plaintiff from irreparable injury and to preserve the court's power to render a meaningful decision after a trial on the merits." WRIGHT & MILLER, FED. PRAC. & PROC. § 2947 (3d ed.). All injunctions must (1) state the reasons why it issued; (2) state its terms specifically; and (3) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required. FED. R. CIV. P. 65(d); *see State of Louisiana v. Biden*, 45 F.4th 841, 846 (5th Cir. 2022). "[A]n ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (quoting reference omitted). These requirements "embod[y] the elementary due process requirement of notice." *Id.* Rule 65(d) "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Id.* at 212 (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)); *see also U.S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 (5th Cir. 1975).

An injunction may violate Rule 65(d) if it is vague or overbroad. *See Scott*, 826 F.3d at 211. "[T]he broadness of an injunction refers to the range of proscribed activity, while vagueness refers to the particularity with which the proscribed activity is described." *Id.* (quoting *U.S. Steel Corp.*, 519 F.2d at 1246 n.19) (alteration adopted). Vagueness "is a question of notice, *i.e.*, procedural due process, and 'broadness' is a matter of substantive law." *Id.* at 211 (quoting *U.S. Steel Corp.*, 519 F.2d at 1246 n.19). "[A]n injunction is overly vague if it fails to satisfy the specificity requirements set out in Rule 65(d)(1), and it is overbroad if it is not narrowly tailored to remedy the specific action which gives rise to the order as determined by the substantive law at issue." *Id.* (quotation marks omitted and alterations adopted); *see also id.* at 213 (an injunction is

4

overly vague if it cannot "be readily understood"). Though an injunction order "must be clear," a court "need not anticipate every action to be taken in response to its order, nor spell out in detail the means in which its order must be effectuated." *Hornbeck Offshore Services, L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013) (quoting reference omitted). Courts are "entitled to a degree of flexibility in vindicating [their] authority against actions that, while not expressly prohibited, nonetheless violate the reasonably understood terms of the order." *Id.*

"[T]he Supreme Court has denounced broad injunctions that merely instruct the enjoined party not to violate a statute," so-called "obey the law" injunctions. *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316 (Fed. Cir. 2004) (citing *NLRB v. Express Publ'g Co.*, 312 U.S. 426, 435–36 (1941)). "Obey the law" injunctions are overbroad because they "increase the likelihood of unwarranted contempt proceedings for acts unlike or unrelated to those originally judged unlawful." *Id.* (citing *Express Publ'g Co.*, 312 U.S. at 435–36). They are also vague because they do not "give the restrained party fair notice of what conduct will risk contempt." *Louis W. Epstein Family P'ship v. Kmart Corp.*, 13 F.3d 762, 771 (3d Cir. 1994).

Applying these principles to the context of trademark or patent infringement, it follows that an injunction may not "simply prohibit[] future infringement of a patent." *Int'l Rectifier*, 383 F.3d at 1316. Instead, the injunction must "state which acts constitute[] infringement" and "expressly limit its prohibition to the manufacture, use, or sale of the specific device found to infringe, or devices no more than colorably different from the infringing device." *Id.*

A preliminary injunction, like a permanent injunction, may be enforced through civil contempt. WRIGHT & MILLER, *supra* § 2947; *see* 18 U.S.C. § 401. "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Hornbeck*, 713 F.3d at

792 (quoting reference omitted). "For civil contempt, this must be established by clear and convincing evidence." *Id.* Contempt "is a severe remedy, and should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885). "Thus, not all subsequent infringements by an enjoined party are deemed in contempt of the court, even though an injunction may be written broadly enjoining, as in *California Paving*, further infringements." *KSM Fastening Sys., Inc. v. H.A. Jones Co., Inc.*, 776 F.2d 1522, 1525 (Fed. Cir. 1985), *overruled on other grounds by TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869 (Fed. Cir. 2011). "[A]ll omissions or ambiguities in [an injunctive] order [are] resolved in favor of any person charged with contempt." WRIGHT & MILLER, *supra* § 2955. "[N]o conduct or action will be prohibited by implication." *Id.*

**III.    Analysis**

Luxury Lounger argues that the preliminary injunction is unenforceable because, to the extent that it prohibits "colorable imitations" of the Wave Lounger or "any other products that are confusingly similar to Plaintiff's trade dress rights in U.S. Trademark Registration No. 6,932,905," it is vague, ambiguous, and an "obey the law" injunction. The court disagrees that the preliminary injunction is unenforceable. However, substantial open issues surrounding the validity of Ledge Lounger's trademark and whether Luxury Lounger's products infringe make the sanction of contempt inappropriate. These unresolved substantive issues should not be litigated in the summary context of contempt proceedings.

**A.    Enforceability**

The preliminary injunction prohibits Luxury Lounger from "advertising, marketing, importing, manufacturing, promoting, offering for sale, distributing, or selling [1] the Wave Lounger product, [2] colorable imitations thereof, and [3] any other products that are confusingly

similar to Plaintiff's trade dress rights in U.S. Trademark Registration No. 6,932,905." (Docket Entry No. 18 ¶ 2).

Luxury Lounger argues that the second and third clauses are unenforceable because they are "vague and ambiguous" and merely order Luxury Lounger to obey the law. Luxury Lounger notes that the phrase "colorable imitation" appears in section 32(1)(a) of the Lanham Trademark Act, which prohibits the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a).

The court is not persuaded by the argument that "colorable imitation" is too vague and confusing to be enforceable. The words are in the statute. And the Fifth Circuit used the words in *Eskay Drugs v. Smith, Kline & French Laboratories*, 188 F.2d 430, 431–32 (5th Cir. 1951), without expressing doubts as to its meaning or clarity:

> The injunction in this case permanently enjoined appellants directly or indirectly from infringing appellee's trade-marks, and from using the word 'Eskay' or any colorable imitation thereof. Thus we have left for decision the sole question of whether appellants' use of the word 'Enkay,' in the same way it had previously used appellee's trade-mark 'Eskay,' is a colorable imitation of the trade-mark 'Eskay.' We think it is.
>
> Appellants do not necessarily have to use the identical word to invade the rights of appellee. It is sufficient if they adopt a trade-mark so like appellee's in form, spelling, or sound, that a person who does not have a very definite or clear recollection of the real trade-mark is likely to become confused or misled. That is the reason the injunction specifically prohibited appellants' use of any colorable imitation of the word 'Eskay.' In such a case as this, where the appellants have been found guilty of infringing the trade-mark rights of others, they should thereafter be required to keep a safe distance away from the dividing line between violation of, and compliance with, the injunction. They must do more than see how close they can come with safety to that which they were enjoined from doing.

Luxury Lounger's argument that the "colorable imitation" language is unenforceable is directly contrary to *Eskay*'s holding that, by incorporating that language, trademark injunctions

7

may require the enjoined party to "keep a safe distance away" from the plaintiff's trademark. *See also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949) (discussing "the necessity of decrees that are not so narrow as to invite easy evasion"); *Plough, Inc. v. Kreis Labs.*, 314 F.2d 635, 639 (9th Cir. 1963) (an infringer must "be required to keep a safe distance away from the margin line") (quotation marks and quoting reference omitted).

Relying on dicta in *Diageo North America, Inc. v. Mexcor, Inc.*, 661 F. App'x 806, 814 (5th Cir. 2016), Luxury Lounger argues that *Eskay* does not control the question of whether an injunction prohibiting "colorable imitations" of a product is enforceable. The injunction in *Diageo* prohibited the defendant "from using marks that are confusingly similar to or dilute [the plaintiff's] brands." *Id.* at 814. The court expressed "hesitan[cy] to approve such open-ended language, particularly because in other contexts this court has held that such 'obey the law' injunction orders are not permitted." *Id.* Nonetheless, the court declined to vacate the injunction. *Id.* Instead, it merely "suggest[ed] the district court reconsider whether the provision is insufficiently specific," while cautioning that, "[if] the district court again uses similar language in a revised injunction, nothing in this opinion should be read as any ruling on its validity." *Id.* The court noted that the injunction in *Eskay* "contain[ed] similar language" and was "not stricken . . . as impermissibly vague." *Id.* But it interpreted *Eskay* as "not squarely discuss[ing] any vagueness issue." *Id.*

*Diageo* offers no help to Luxury Lounger given its express disclaimer that "nothing in this opinion should be read as any ruling on [the] validity" of injunctions prohibiting the use of marks that are "confusingly similar" to or "colorable imitations" of the plaintiff's trademark. Unless and until the Fifth Circuit overturns *Eskay*, it controls the analysis.

Luxury Lounger also relies on dicta in *Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*, 46 F.4th 374, 386 (5th Cir. 2022), *cert. denied sub nom. Camellia Grill Holdings Inc. v. Grill*

8

*Holdings, L.L.C*, 143 S. Ct. 735, 214 L. Ed. 2d 385 (2023).  In that case, the parties cross-appealed an injunction prohibiting the defendants from "utiliz[ing] [] all or most" of the plaintiff's eight-element trade dress.  *Id.* at 386.  The plaintiffs argued that the injunction should have prohibited the defendants from "using any single element" of the trade dress.  *Id.*  The defendants argued that the injunction should be interpreted "to require infringement of *all* eight features in combination."  *Id.*  The Fifth Circuit noted that the "all or most" language added some imprecision to the injunction, but upheld the injunction, distinguishing it from "other cases in which injunctions referencing trade dress have been reversed for vagueness" for generally prohibiting the "employing of 'confusingly similar' trade dress."  *Id.* (citing *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 984–85 (11th Cir. 1983); *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 748 (2d Cir. 1994); *Boost Oxygen, LLC v. Oxygen Plus, Inc.*, 477 F. Supp. 3d 871, 885 (D. Minn. 2020), *aff'd*, 843 Fed. App'x. 322 (Fed. Cir. 2021)).  *Uptown Grill* is no more helpful for Luxury Lounger than *Diageo*.  As in *Diageo*, the court's language about vagueness is dicta because the court determined that, "[t]o the extent that the [plaintiffs] [] complain of the 'all or most' language of the injunction as too vague to notify the enjoined parties of the conduct the injunction prohibits, this argument is insufficiently briefed."  *Id.* at 387 n.10.

The preliminary injunction does not simply direct Luxury Lounger to obey § 1114 of the Lanham Act or to avoid infringing Ledge Lounger's trademarks.  *Compare Int'l Rectifier*, 383 F.3d at 1316 (an injunction may not "simply prohibit[] future infringement of a patent"); *Harland*, 711 F.2d at 985 (vacating an injunction that did not "adequately specif[y] the acts which [the defendant] must discontinue in order to avoid infringing" the plaintiff's trade dress); *Sterling*, 14 F.3d at 748 & n.10 (vacating an injunction prohibiting the defendant from "violating any of [the plaintiff]'s rights in the trademark and trade name BAYER under the Lanham Trademark Act").

Rather, the injunction identifies a specific product, the Wave Lounger, that Luxury Lounger may not market, manufacture, distribute, or sell. The phrase "colorable imitation" is tethered to that specific product. Courts routinely enforce injunctions that prohibit a specific infringing product and products that are "colorable imitations of," or that are "no more than colorably different" from, that product. *See Fleet Feet, Inc. v. NIKE, Inc.*, 986 F.3d 458, 463–64 (4th Cir. 2021) ("[A] command that one cease using a word that is 'confusingly similar' to an existing trademark is common in trademark case injunctions.") (quoting *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991)); *see also, e.g.*, *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869 (Fed. Cir. 2011); *Int'l Rectifier*, 383 F.3d at 1316; *KSM*, 776 F.2d at 1525; *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 759 F.3d 1333, 1338 (Fed. Cir. 2014); *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990). The Federal Circuit has held, in the patent context, that all injunctions prohibiting an infringing product also implicitly prohibit redesigned products that are no more than "colorably different from, or a colorable imitation of, the previously enjoined product[]." *Aevoe Corp. v. AE Tech Co., Ltd.*, 727 F.3d 1375, 1383 (Fed. Cir. 2013). That rule is irreconcilable with Luxury Lounger's argument that the "colorable imitation" language makes the preliminary injunction unenforceable.

The preliminary injunction complies with Rule 65(d) and is enforceable.

    **B.**    **Whether Contempt is Appropriate**

The parties appear to agree that the Lanham Act's definition of "colorable imitation" applies to the preliminary injunction. (Docket Entry No. 52 at 12 n.1). The Act provides: "The term 'colorable imitation' includes any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive." 15 U.S.C. § 1127. Reasoning from this definition, Luxury Lounger concludes that, to decide whether the redesigned Wave Lounger is a colorable imitation of the original, the court must conduct a likelihood of confusion analysis—that is, an

analysis of whether the redesigned Wave Lounger is confusingly similar to Ledge Lounger's "trademark registration and/or [Luxury Lounger]'s original chair." (Docket Entry No. 54 at 32). Ledge Lounger, by contrast, argues that the court "need not undertake a full likelihood of confusion analysis," but need only "determine whether the modified product is confusingly similar to the original, enjoined product and/or Plaintiff's registered trade dress." (Docket Entry No. 52 at 13).

One important fact distinguishes this case from the typical case in which contempt sanctions are sought for an alleged violation of a trademark or patent injunction: there has been neither an adjudication nor an admission of infringement. *Compare Eskay*, 188 F.2d at 431 (the defendant had been "found guilty of infringing the trademark rights of others"); *KSM*, 776 F.2d at 1529 (infringement was admitted); *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th Cir. 1997) (infringement was admitted); *World's Finest Chocolate, Inc. v. World Candies, Inc.*, 409 F. Supp. 840, 844 (N.D. Ill. 1976), *aff'd*, 559 F.2d 1226 (7th Cir.1977) ("It is well established that the protection of a trademark requires that a party once convicted of infringement . . . should keep a safe distance from the margin line between compliance with the order and a violation."). The Federal Circuit has held, in the patent context, that "[i]nfringement is the *sine qua non* of violation of an injunction against infringements." *KSM*, 776 F.2d at 1528. It has called "universal" the rule that contempt proceedings "are available only with respect to devices previously admitted or adjudged to infringe, and to other devices which are no more than colorably different therefrom and which clearly are infringements." *Id.* at 1526. "If there are substantial open issues with respect to infringement to be tried, contempt proceedings are inappropriate." *Id.* at 1532; *see also Calif. Paving*, 113 U.S. at 618 (proceeding by way of a new suit "is by far the most appropriate one where it is really a doubtful question whether the new process adopted is an infringement or not").

11

The court finds that it would be inappropriate to hold Luxury Lounger in contempt for selling the redesigned Wave Lounger when the original Wave Lounger has not been determined, or admitted, to infringe Ledge Lounger's Signature Chaise trademark.  Whether Ledge Lounger's trademark is valid and whether there is any likelihood of confusion or infringement between Ledge Lounger's and Luxury Lounger's products are substantial open questions.  It is also inappropriate to decide those issues in the summary context of contempt proceedings, rather than in a trial on the merits.  *See Abbott Labs. v. TorPharm, Inc.*, 503 F.3d 1372, 1380 (Fed. Cir. 2007) ("Requiring disputed issues to be tried through full litigation rather than summary proceedings eliminates due process concerns for the defendant accused of violating an injunction.").

## IV.    Conclusion

The motion for contempt, on this record, is denied.  (Docket Entry No. 52).

SIGNED on February 14, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge